# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| WALLEON BOBO,            ) | |
|            ) | |
|            ) | |
|     Plaintiff,     ) | |
|            ) | |
| v.            ) | No. 08-2238 |
|            ) | |
| UNITED PARCEL SERVICE, INC.,  ) | |
|            ) | |
|     Defendant.     ) | |

## ORDER

Before the Court are Plaintiff Walleon Bobo's ("Bobo") September 20, 2012 objections to the Magistrate Judge's September 12, 2012 Order (the "September 12 Order"), Bobo's December 5, 2012 objections to the Magistrate Judge's November 21, 2012 Order on Motion for Attorney's Fees (the "November 21 Order"), and Bobo's December 11, 2012 objections to the Magistrate Judge's December 6, 2012 Order (the "December 6 Order"). (See Objections to Magistrate's Order, ECF No. 203); (Notice of Objections of Pl. to Magistrate's Order, ECF No. 235); (see also Objection to Magistrate's Order, ECF No. 238.) Also before the Court are Defendant United Parcel Service, Inc.'s ("UPS") December 5, 2012 objections to the November 21 Order and December 20, 2012 objections to the December 6 Order. (See Def.'s Objections to Nov. 21, 2012 Order Granting Pl.'s

Mot. for Attorney's Fees and Costs, ECF No. 234); (Def.'s Objections to Dec. 6, 2012 Order, ECF No. 240.) For the following reasons, the Court OVERRULES Bobo's objections to the September 12 Order, OVERRULES Bobo's objections to the November 21 Order, and OVERRULES Bobo's objections to the December 6 Order. The Court SUSTAINS IN PART and OVERRULES IN PART UPS' objections to the November 21 Order and OVERRULES UPS' objections to the December 6 Order.

## I.  Background

Bobo alleges discrimination and retaliation on the basis of age, race, and military status in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et seq., 42 U.S.C. § 1981, the Tennessee Human Rights Act, T.C.A. §§ 42-21-101 et seq., the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., and the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301 et seq. (Sec. Am. Compl. ¶¶ 26-49, ECF No. 28.)

The Court conducted a jury trial from June 25 until June 27, 2012. On June 27, the Court declared a mistrial based on UPS' failure to produce documents in discovery. An investigative file produced by UPS failed to include a handwritten statement from David Pendleton ("Pendleton") and a safety ride report from Carolyn Mills ("Mills"). The updated files were not disclosed to Bobo until the third day of trial.

In declaring a mistrial, the Court reasoned:

> When an event occurs that so affects the ability of a
> party to present their case effectively and that event
> should have been avoided in the discovery process, and
> when the opposite party has introduced into the record
> materials which are materially – that appear to be
> materially incomplete, at this stage of the proceeding
> it is necessary for the court to grant the plaintiff's
> motion for a mistrial.

(Trial Tr. 536:5-13, ECF No. 192.) The Court refused to issue a
curative instruction to the jury, reasoning that "[i]n this
particular case under the particular circumstances, Mr.
Pendleton was the cornerstone of the plaintiff's presentation
other than Mr. Bobo's testimony. His . . . direct examination
was central to the theory of the plaintiff and a statement by
Mr. Pendleton was not disclosed." (Id. 536:22-537:2.)

UPS' duty to disclose arose from the Magistrate Judge's May
11, 2012 Order (the "May 11 Order"). (See Order Granting Pl.'s
Mot. to Compel in Part, Granting Mot. to Conduct More
Depositions, and Order Denying Mot. for Sanctions, ECF No. 131.)
The relevant portion of the May 11 Order required UPS to
"produce all documents, security files and discipline records
associated with [individuals]" identified in UPS' responses to
Bobo's interrogatories. (Id. 2.) Pendleton was identified in
Bobo's interrogatories, and UPS was required to produce "all
documents" pertaining to him.

On July 20, 2012, Bobo moved to impose sanctions against
UPS for its failure to produce Pendleton's complete statement.
(Mot. for Sanctions, ECF No. 188.)  On August 28, 2012, the
Magistrate Judge conducted a hearing.  (ECF No. 199.)  On
September 12, 2012, the Magistrate Judge entered an order
granting in part and denying in part Bobo's motion.  (Sept. 12
Order.)  The Magistrate Judge directed UPS to: (1) produce "any
complaint files, investigative files, and security files in its
possession with respect to UPS case numbers," and (2) produce a
Rule 30(b)(6) "corporate representative to testify regarding
documents, if any, that are produced in response" to the
Magistrate Judge's September 12 Order.  (Sept. 12 Order 1, ECF
No. 200.)  The September 12 Order gave Bobo seven days to submit
affidavits in support of any request for attorney's fees.  (<u>Id.</u>
3.)

Bobo objected and moved to amend the Magistrate Judge's
September 12 Order.  (<u>See</u> Objections to Magistrate's Order, ECF
203); (<u>see also</u> Third Mot. for Sanctions and Mot. to Alter or
Am. Order on Mot. for Sanctions, ECF No. 206.)  Bobo argued that
"because UPS has engaged in intentional discovery abuse, causing
enormous prejudice, and was well aware of the sanctions
possible, its Answer and Affirmative defenses should be struck.
The Magistrate incorrectly found otherwise, and failed to make
fact findings at all."  (Objections to Magistrate's Order 3.)

After holding hearings on October 15, 2012 and November 5, 2012, the Magistrate Judge denied Bobo's request to amend. (ECF Nos. 219, 231.)

On October 3, 2012, in accordance with the Magistrate Judge's September 12 Order, Bobo moved for attorney's fees and costs. (Application for Attorney's Fees and Costs, ECF No. 212.) Bobo requested $116,670.00 in attorney's fees and $8,075.17 in costs to Attorneys Lucien Gillham and Luther Sutter. (See Invoice #10367, ECF No. 212-3); (Income by Customer Detail, ECF No. 212-4.) Bobo requested $107,520.00 in fees and $3,304.70 in costs for Attorney Andrew Clarke ("Clarke"). (Sworn Decl. of Andrew C. Clarke in Supp. of Request for Att'y Fees and Costs 3, ECF No. 212-5.) UPS responded on October 17, 2012. (Def.'s Resp. in Opp. To Pl.'s Application for Attorney's Fees, ECF No. 222.) On November 21, 2012, the Magistrate Judge entered an order awarding $82,982.50 in attorney's fees and $4,559.06 in costs to Gillham and Sutter, and $62,647.50 in fees and $2,954.70 to Clarke. (Nov. 21, 2012 Order 1, ECF No. 230.)

On December 5, 2012, Bobo objected to the Magistrate Judge's November 21 Order. (Notice of Objections of Pl. to Magistrate's Order, ECF No. 235.) Bobo asked that the Court: (1) uphold the award of fees, but increase the amounts to include fees sought beyond the dates considered by the

Magistrate Judge; and (2) award more severe sanctions against UPS. (Id. 3.)

On December 5, 2012, UPS objected to the Magistrate Judge's November 21 Order. (Def.'s Objections to November 21, 2012 Order Granting Pl.'s Mot. for Attorney's Fees and Costs, ECF No. 234.) UPS objected on the basis that: (1) the Magistrate Judge sua sponte imposed fees in violation of UPS' due process rights; and (2) the Magistrate Judge did not determine that the failure to disclose Pendleton's handwritten statement and Mills' report prejudiced Bobo. (Id. 1-2.) UPS also objected that the fees awarded were not proven and were miscalculated. (Id. 2.)

On December 6, 2012, the Magistrate Judge entered an order amending the September 12 Order, supplementing earlier discovery requests, and denying miscellaneous relief. (Dec. 6, 2012 Order, ECF No. 237.) The Magistrate Judge addressed Bobo's objections to the September 12 Order, modifying a paragraph and concluding that UPS had adequate notice before the imposition of sanctions. (Id. 3-4.) The Magistrate Judge ordered UPS to supplement its discovery responses, denied Bobo's request for jury instructions as premature, and refused to reopen discovery for additional depositions. (Id. 4).

On December 11, 2012, Bobo objected to the Magistrate Judge's December 6 Order. (Objection to Magistrate's Orders 8-9.) Bobo argues that the Magistrate Judge erred by refusing to:

6

(1) strike UPS' Answer and affirmative defenses; (2) issue an order requiring jury instructions about the parties' discovery disputes; (3) require UPS to produce all witnesses under its control; (4) require UPS to produce documents withheld as to many witnesses; and (5) require UPS to produce multiple people for deposition. (Id.) The basis for each of Bobo's objections was that, "[a]t every step, UPS has intentionally stymied discovery." (Id. 7.)

On December 20, 2012, UPS objected to the Magistrate Judge's December 6 Order. (Def.'s Objections to December 6 Order.) UPS objected that the Magistrate Judge failed to: (1) provide notice that UPS could be sanctioned; (2) provide notice of the legal basis for imposing sanctions; and (3) provide due process in her consideration of Bobo's application for attorney fees pursuant to the September 12 Order. (Id. 1-2.)

## II. Standard of Review

Congress intended 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to magistrate judges. See United States v. Curtis, 237 F.3d 598, 602 (6th Cir. 2001) (citing Gomez v. United States, 490 U.S. 858, 869-70 (1989)); see also Baker v. Peterson, 67 F. App'x 308, 310 (6th Cir. 2003). Under 28 U.S.C. § 636(b)(1)(A), the district court "may reconsider any pretrial matter [referred to the magistrate judge] . . . where it has

been shown that the magistrate's order is clearly erroneous or contrary to law." Rule 72(a) of the Federal Rules of Civil Procedure "implements" § 636, providing that the "district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." See Massey v. City of Ferndale, 7 F.3d 506, 509 (6th Cir. 1993).

As this Court has stated:

> A judicial finding is deemed to be clearly erroneous when it leaves the reviewing court with a definite and firm conviction that a mistake has been committed. Under the clearly erroneous standard, a court reviewing a magistrate judge's order should not ask whether the finding is the best or only conclusion that can be drawn from the evidence. Further, this standard does not permit the reviewing court to substitute its own conclusion for that of the magistrate judge. Rather, the clearly erroneous standard only requires the reviewing court to determine if there is any evidence to support the magistrate judge's finding and that the finding was reasonable.

Tri-Star Airlines, Inc. v. Willis Careen Corp. of Los Angeles, 75 F. Supp. 2d 835, 839 (W.D. Tenn. 1999) (internal citation and quotation marks omitted) (citing Heights Cmty. Congress v. Hilltop Realty, Inc., 774 F.2d 135, 140 (6th Cir. 1985)).

The issues addressed in the Magistrate Judge's pre-trial orders are non-dispositive. The Magistrate Judge's September 12 Order addressed the imposition of discovery sanctions and the production of complaint, investigative, and security files. The

Magistrate Judge's November 21 Order addressed the imposition of attorney's fees and costs under Rule 37 of the Federal Rules of Civil Procedure. The Magistrate Judge's December 6 Order addressed the imposition of attorney's fees and costs, supplemental discovery responses, requests for jury instructions, and requests to take additional depositions. Because each order addressed pre-trial, non-dispositive motions, the Magistrate Judge's conclusions are reviewed under the clearly erroneous or contrary to law standard. See id. at 508 (the general rule is that a "motion for attorneys fees and costs is deemed to be a 'non-case dispositive, factual matter and, as such, the standard to be applied" is whether the Magistrate Judge's ruling is clearly erroneous).

### III. Analysis

#### A. The September 12 Order

The Magistrate Judge's September 12 Order addressed Bobo's July 20 motion for sanctions arising from UPS' failure to comply with the May 11 Order. (See Mot. for Sanctions, ECF No. 188.) The Magistrate Judge ordered UPS to "produce any complaint files, investigative files, and security files." (Sept. 12 Order 1.) The Magistrate Judge ordered UPS to "produce a 30(b)(6) corporate representative to testify regarding documents, if any, that are produced" in response to the complaint, investigative, and security files. (Id.) The

Magistrate Judge withheld a decision on sanctions under Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure, giving both parties time to file and respond to specific requests for fees. (Id. 2.) UPS was "specifically warned that any further violations of the Court's Orders may result in sanctions as permitted under Fed. R. Civ. P. 37 and the Court's inherent powers which may include striking the Defendant's Answer and entering a Default Judgment against Defendant." (Id.)

Bobo objects to the Magistrate Judge's September 12 Order on several grounds. First, Bobo objects that "the Magistrate made no findings of fact at all, cited no legal authority, and provided no explanation of her reasoning." (Br. in Supp. of Objection to Magistrate's Order 1, ECF No. 203-3.) Second, Bobo objects to the Magistrate Judge's decision not to order an adverse jury instruction. (Id.) Third, Bobo argues that the Magistrate Judge failed to apply the correct standard and ignored relevant facts when she refused to conclude that UPS had withheld documents willfully. (Id. 2-3.) Fourth, Bobo argues that UPS was on notice of potential sanctions. (Id. 6-7.) Fifth, Bobo objects that, even if UPS "was not on notice of sanctions, the Magistrate appeared to consider fees, the denial of jury instructions favorable to the defendant, and granting favorable instructions to [Bobo] as extreme sanctions, which they are not." (Id. 8.) Sixth, Bobo argues that the Magistrate

Judge misstated the scope of the Sixth Circuit's ruling in <u>Bobo v. United Parcel Service, Inc.</u>, 665 F.3d 741 (6th Cir. 2012). Bobo prays that the Court "reverse the Magistrate's Order and require, at the least, an adverse instruction against [UPS], denial of instructions favorable [to UPS], as well as striking the Answer and affirmative defenses." (Br. in Supp. of Objection to Magistrate's Order 8.)

In response, UPS argues that it "complied with its discovery obligations throughout the litigation and there is no indication of any improper discovery tactics by UPS." (Def.'s Resp. to Pl's Objections 4, ECF No. 214.) Although the basis for the June 27 mistrial was a failure to produce documents about Peterson and Mills, UPS argues that "UPS had never previously been required to produce information regarding any comparators other than Ronnie Wallace." (<u>Id.</u>) UPS asserts that all "discovery issues, with the exception of the production of [] Pendleton's statement and [] Mills' safety ride form were contained in an updated version of the UPS Security File, have been resolved either by the Court, by Plaintiff's deliberate decision not to timely pursue the matters, or by agreement between the parties." (<u>Id.</u> 5.) UPS argues that there is no basis for sanctions, the Magistrate Judge applied the correct legal standard, and Bobo had engaged in inappropriate discovery tactics. (<u>Id.</u> 7-16.)

### 1. Magistrate Judge's Findings and Conclusions

Bobo objects based on the Magistrate Judge's alleged failure to make findings of fact, cite relevant case law, and justify her reasoning.

At a hearing on August 28, 2012, the Magistrate Judge opened proceedings by saying, "I want to be sure we're clear on what the scope of today's hearing is." (Aug. 28 Hr'g Tr. 5:14-16, ECF No. 203-1.) The "scope" referred to by the Magistrate Judge included UPS' alleged violations of the May 11 Order. (Id. 5:17-18.)

The Magistrate Judge's decision to limit the scope of the August 28 hearing must be viewed in light of the June 27 mistrial. The Court granted a mistrial based on UPS' failure to include a handwritten note in Pendleton's file and Mills' safety ride document. (See Trial Tr. 536:5-13.) Given that foundation, it was not clearly erroneous for the Magistrate Judge to state that "all [] I'm concerned with is what, if any, are the failures to . . . comply with [the May 11] order. Other than that, to me there isn't anything else to discuss. This isn't about the history of the case." (Aug. 28 Hr'g Tr. 5:18-22.)

To the extent Bobo argues that the Magistrate Judge failed to cite relevant case law and explain her ruling, his objections are overruled. The Magistrate Judge refused to entertain Bobo's

request to strike UPS' Answer and affirmative defenses because those actions would be inconsistent with Rule 35 and "Sixth Circuit law requires that defendants have been or the offending party, if you will, have been on notice that they would be subject to that kind of sanction if they continued to disobey." (Id. 5:23-6:6.) The Magistrate Judge elected to treat the May 11 as "the first order in this case where UPS has been compelled to do something." (Id. 6:7-9.) The Magistrate Judge concluded that more information was necessary to determine the extent to which UPS violated the May 11 Order and, if the Court found a violation, it would proceed accordingly." (Id. 6:9-11) ("I need to know now what it is they have failed to do in response to that order and then we will go from there.") (emphasis added.) The Court is not left with a definite and firm conviction that a mistake has been committed.

### 2.     Decision on Adverse Jury Instruction

Bobo objects to the Magistrate Judge's decision not to order an adverse jury instruction based on UPS' discovery violations. He relies on the Sixth Circuit's characterization of Clay v. UPS, 501 F.3d 695, 711-12, 716 (6th Cir. 2007), where the Court concluded:

> In [Clay], we considered UPS's failure to turn over
> discovery in two instances: (1) certain bid sheets
> that could have been used to show one plaintiff and
> the proposed comparators were similarly situated; and
> (2) attendance records that a second plaintiff could

have used to show that he and proposed comparators engaged in acts of comparable seriousness. The district court granted summary judgment against both plaintiffs without requiring UPS to turn over the records in question. This Court reversed, ruling that the district court should have drawn adverse inferences against UPS for failing to disclose the bid sheets and the attendance records. The Court stated that 'Clay should not be punished for his inability to point to the relevant comparators in this case[,]' because the 'general rule is that [w]here relevant information . . . is in the possession of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it.'

Bobo, 665 F.3d at 752 (internal citations and quotation marks omitted). Bobo reasons that, if the district court was required to draw adverse inferences against UPS in Clay, the Court should also be required to draw adverse inferences against UPS here.

Clay does not support Bobo's argument. Clay reversed the district court's grant of summary judgment because of a failure to recognize certain individuals as comparators. Clay does not stand for the proposition that a plaintiff is entitled to an adverse jury instruction. The Magistrate Judge's conclusion is not clearly erroneous or contrary to law.

Bobo's objection to the decision not to order an adverse jury instruction is OVERRULED without prejudice. Bobo may make a separate motion for an adverse jury instruction at the appropriate time during trial.

### 3. The Magistrate Judge Applied the Correct Legal Standard

Bobo argues that the Magistrate Judge erred by concluding that UPS did not willfully violate the May 11 Order.  According to Bobo, the Magistrate Judge should have ordered a dismissal based on UPS' willful, bad-faith behavior.  Bobo argues that: (1) circumstantial evidence supported an inference that UPS acted willfully; (2) UPS knew, or should have known, that Pendleton was a comparator whose documents needed to be produced; (3) UPS engaged in a post-appeal pattern of bad faith; (4) UPS failed to produce Pendleton's original security file at trial; (5) UPS refused to record a post-appeal in-person meeting with Bobo's counsel; (6) UPS is a large, sophisticated company that should have kept track of a security file; and (7) UPS' reasons for failing to produce the correct Pendleton file show bad faith.

Bobo's arguments can be disposed of as a matter of law.  As the Sixth Circuit has concluded, "dismissal of an action for failure to cooperate in discovery is a sanction of last resort that may be imposed only if the court concludes a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault."  See Bank One of Cleveland v. Abbe, 916 F.2d 1067, 1073 (6th Cir. 1990); see also Regional Refuse Sys. v. Inland Reclamation Co., 842 F.2d 150, 154 (6th Cir. 1988) ("Dismissal of an action for failure to cooperate in discovery is a sanction of last resort.").  The May 11 Order was "the

first order in this case where UPS [had] been compelled to do something." (Aug. 28 Hr'g Tr. 6:7-9.) Thus, the August 28 hearing was the first time the Magistrate Judge considered sanctions for violating the May 11 Order. The Sixth Circuit requires the consideration of less drastic sanctions before extreme sanctions are considered. See Regional Refuse, 842 F.3d at 154. The Magistrate Judge's conclusion that severe sanctions were unwarranted was neither clearly erroneous nor contrary to law.

### 4. The August 28 Hearing, Not the Sixth Circuit's Opinion, Gave UPS Notice of Possible Sanctions

Bobo vigorously asserts that UPS was on notice that extreme sanctions, such as striking the Answer, would result from failing to obey previous discovery orders. At the August 28 hearing, the Magistrate Judge stated, "the sanctions that won't be available today are striking the answer and all of that because it's just not appropriate. The – the Sixth Circuit law requires that defendants . . . have been on notice that they would be subject to that kind of sanction if they continued to disobey." (Aug. 28 Hr'g Tr. 5:24-6:6.)

Bobo objects on grounds that the Magistrate Judge's statement is incorrect. Bobo asserts several reasons why: (1) the Sixth Circuit specifically ordered Bobo's Motion to Compel be granted as to Pendleton; (2) the Court indicated at the

February 12, 2012 scheduling conference that Bobo's Motion to Compel would be granted; (3) the Magistrate Judge stated, in April 2012, that Bobo's Motion to Compel would be granted; and (4) the May 11 Order encapsulated Bobo's Motion to Compel.

The parties dispute the scope of the Sixth Circuit's mandate. In reversing the district court's grant of summary judgment to UPS, the Sixth Circuit "instruct[ed] the district court to grant Bobo's motion to compel UPS to provide appropriate discovery in response to Bobo's written discovery requests for information on proposed comparators other than Ronnie Wallace." Bobo, 665 F.3d at 754 (emphasis added). The Sixth Circuit left the scope of the "appropriate discovery" to the district court. Id. at 753 ("We remand the case to the district court to re-evaluate Bobo's discovery requests."). Thus, the Sixth Circuit granted Bobo's motion to compel, but not to the extent he asserts. The significance of Pendleton and Mills' documents was noted, but the parameters of the post-appeal discovery orders were left to the district court. UPS was not officially on notice until the May 11 Order.

The August 28 hearing was UPS' notice hearing for possible violations of the May 11 Order. Before the May 11 Order, UPS had complied with the Magistrate Judge's discovery orders. (See Order Denying Mot. to Compel and Mot. to Extend Discovery Cutoff Deadline 2-3, ECF No. 44.) UPS' failure to comply with the May

17

11 Order does not mean that UPS' Answer and affirmative defenses must be stricken. A court has considerable discretion in sanctioning discovery violations. See Beil v. Lakewood Eng'g & Mfg. Co., 15 F.3d 546, 551-52 (6th Cir. 1994). In reviewing the Magistrate Judge's determination, the Court does not find that the Magistrate Judge's decision was clearly erroneous or contrary to law.

### 5. Extreme Sanctions Were Not Appropriate

Bobo argues that, even if UPS were "not on notice of sanctions, the Magistrate appeared to consider fees, the denial of jury instructions favorable to the defendant, and granting favorable instruction to the Plaintiff as extreme sanctions, which they are not." (Br. in Supp. of Objection to Magistrate's Order 8.) As a threshold matter, the Magistrate Judge did not impose sanctions until the November 21 Order. The September 12 Order ordered the parties to brief the issue of fees as a possible sanction. The Magistrate Judge clearly stated that the August 28 hearing addressed, in the first instance, UPS' alleged violation of the May 11 Order. Because the Sixth Circuit requires courts to notify parties of extreme sanctions, the Magistrate Judge did not err by refusing to impose extreme sanctions. Her refusal was not clearly erroneous or contrary to law.

### 6. The Magistrate Judge Did Not Misstate Sixth Circuit Precedent

Bobo objects to the Magistrate's characterization of the Sixth Circuit's ruling in Bobo as vindication. At the August 28 hearing, Bobo argued that, had the Pendleton documents been produced before appeal, the district court would have denied summary judgment. The Magistrate Judge said, "That [argument has] already been vindicated, it really has - - not only is it vindicated, the fact of the matter is that [Pendleton's document] wasn't produced because Magistrate Judge Cohn said it didn't have to be produced." (Aug. 28 Tr. 44:15-19.)

The Magistrate Judge was correct. The pre-appeal discovery order did not include Pendleton as a comparator. UPS complied with the pre-appeal discovery order. Bobo did not explicitly order that Pendleton be included as a comparator. The Sixth Circuit ordered "the district court . . . [to] re-evaluate Bobo's discovery requests." Bobo, 665 F.3d at 753. The May 11 Order and the Court's rationale for declaring a mistrial demonstrate the importance of Pendleton's document. The Magistrate Judge was correct when she said that the Sixth Circuit vindicated Bobo's position. Bobo's objection is OVERRULED.

### B. The November 21 Order

In the November 21 Order, the Magistrate Judge awarded $82,982.50 in attorney's fees and $4,559.06 in costs to Gillham and Sutter, and $62,647.50 in attorney's fees and $2,954.70 in costs to Clarke. (Nov. 21 Order 1.) The Magistrate Judge concluded that Rule 37 provided for sanctions because "the Magistrate Judge's May 11, 2012 Order Granting Plaintiff's Motion to Compel in Part . . . ordered UPS to produce all documents, security files, and discipline records." (Id. 4) (internal citation and quotation marks omitted.) Because, during the June 25-27 trial, the district court found that UPS had not produced all documents, UPS violated the May 11, 2012 Order. (Id.) The Magistrate Judge rejected UPS' assertions that Peterson and Mills' documents undermined Bobo's theory of the case and that UPS' discovery violation was simply an "oversight." (Id. 4-5.)

Finding that an award of fees and costs was justified, the Magistrate Judge limited the scope of the fees to the time after the May 11 Order. The Magistrate Judge concluded that UPS' responses to the May 11 Order "were incomplete and eventually necessitated the mistrial." (Id.) The Magistrate Judge also reduced the requested attorney's fees by amounts Bobo failed to justify. (Id. 6.) The result was an amount less than Bobo had requested. (Id. 6-9.)

### 1. UPS' Objections

UPS objected to the Magistrate Judge's November 21 Order because the "Court's sua sponte imposition of fees based on a purported violation of the Court's May 11, 2012 Order violates UPS' due process rights." (Def.'s Objections to Nov. 21, 2012 Order Granting Pl.'s Mot. for Attorney's Fees and Costs 1.) The basis for UPS' objection is that the September 12 Order directed the parties to "submit affidavits in support of any request for attorney's fees related to the failure to produce the documents set forth in Paragraph 1 [of the September 12, 2012 Order]." (Id. 4.) UPS argues that the September 12 Order "did not state that UPS could be sanctioned for anything other than a violation of the September 12 Order." (Id.)

UPS also argues that sanctions are improper because Bobo was "not prejudiced by the belated production of these two documents . . . [and] because the documents support UPS' position maintained throughout the litigation." (Id. 5.) UPS argues that, even if the sanction award is not set aside, it should be stayed or reduced because Bobo has not proven his fee and the fee award was erroneously calculated.

### a. UPS Was Given Adequate Notice

UPS argues that the award of attorney's fees and costs should "be set aside because it imposes sanctions on UPS without notice or an opportunity to be heard, contrary to law and in violation of UPS's due process rights." (Def.'s Objections to

21

Nov. 21, 2012 Order Granting Pl.'s Mot. of Attorneys' Fees and Costs 2.) The basis for UPS' objection is that the November 21 Order "disregards the Court's September 12, 2012 Order," which limits attorney's fees to those incurred if UPS failed "to produce the documents set forth in Paragraph 1" of the September 12 Order. (Id. 1.)

Attorney's fees "certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." Roadway Express, Inc. v. Piper, 447 U.S. 752, 766-67 (1980); see also Stalley v. Methodist Healthcare, 517 F.3d 911, 920 (6th Cir. 2008) (internal citation and quotation marks omitted). "'A general notice that the court is contemplating sanctions is insufficient; rather, the offending party must be on notice of the specific conduct for which [it] is potentially subject to sanctions.'" United States v. Llanez-Garcia, No. 1:11-CR-177, 2012 U.S Dist. LEXIS 61895, at *4 (N.D. Oh. May 3, 2012) (quoting Johnson v. Cherry, 422 F.3d 540, 551-52 (6th Cir. 2005) (emphasis deleted). A district court's "decision to impose sanctions sua sponte without adequate notice to the sanctioned party also represents an abuse of the court's sanctions power." Johnson, 422 F.3d at 549.

UPS' objection arises from conflicting messages conveyed at the August 28 hearing and in the September 12 Order. On August 28, the Magistrate Judge stated that the hearing addressed

Bobo's motion for sanctions based on UPS' violation of the May 11 Order. The September 12 Order memorialized oral rulings made at the August 28 hearing. (See ECF No. 199) ("After hearing argument, the Court orally gave its ruling.") However, the September 12 Order included a paragraph that provided, in relevant part:

> Within seven (7) days of the entry of this Order, Plaintiff's attorneys will submit affidavits in support of any request for attorney's fees related to the failure to produce documents set forth in Paragraph 1 [of this Order] to which they contend they are entitled. Defendant shall have seven (7) days from the receipt of Plaintiff's affidavits in which to respond. Both submissions shall be guided by Fed. R. Civ. P. 37(b)(2)(C).

(Sept. 12 Order 3.)

Despite the incongruence between what the Magistrate Judge said on August 28 and wrote in her September 12 Order, UPS was on notice of possible sanctions for violating the May 11 Order. The Magistrate Judge was "clear in its oral findings from the bench at the August 28, 2012 hearing that the failure to provide the Pendleton documents was a violation of the May 11, 2012 [Order] and that the Court would order sanctions." (Dec. 6 Order 3.) UPS cannot evade sanction by claiming ignorance when both the oral rulings on August 28 and the circumstances surrounding the hearing were clear.

The Magistrate Judge corrected any conflict between the September 12 Order and the August 28 hearing. Admitting that

language in the September 12 Order was "improperly drafted," the Magistrate Judge concluded that UPS was "well aware that sanctions were being awarded" for violation of the May 11 Order, struck the improperly drafted language, and replaced it with the following:

> Plaintiff's attorneys will submit affidavits in support of any request for attorneys' fees to which they contend they are entitled in connection with Plaintiff's Motion for Sanctions. Defendant will have seven (7) days from the receipt of Plaintiff's affidavits in which to respond. Both submissions shall be guided by Fed. R. Civ. P. 37(b)(2)(C).

(Dec. 6 Order 3-4.) The Magistrate Judge also stated that the November 21 Order "directly flowed from the failure to comply with the May 11 Order." (Id.) UPS was on notice of sanctions.

### b. Bobo Was Prejudiced By the Failure to Disclose Pendleton's File and Mills' Report

UPS argues that Bobo was not prejudiced by its failure to disclose Pendleton's file and Mills' Report. The Court has rejected UPS' argument. (Trial Tr. 536:5-13.)

### c. The Fees Awarded

UPS argues that the "fee award should be stayed or reduced because the Court did not deduct from the fee awards significant attorney time devoted to trial preparation not caused by UPS's production of two documents at trial." (Def.'s Objections to Nov. 21, 2012 Order Granting Pl.'s Mot. for Attorneys' Fees and Costs 7.) Among the disputed fees are amounts related to

exhibits, motions in limine, jury questions, jury instructions, time spent on direct and cross examinations, and research about myriad motions and the admissibility of evidence. (Id. 8) UPS argues that, given "the nature of the late produced documents – a handwritten statement denying wrongdoing – it is unlikely that Plaintiff's trial preparation will change or change significantly and, even if it did, it is unlikely that all this work would be required to be redone." (Id.)

Under Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure, in addition to other sanctions, a court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Rule 37 requires courts to award fees incurred "as a result of [the opposing party's] failure to obey discovery orders," unless an exception applies. Tech. Recycling Corp. v. City of Taylor, 186 F. App'x 624, 638 (6th Cir. 2006). However, a party cannot recover fees that would have been incurred regardless of the discovery violation. Id. (a party cannot recover fees or costs it "would have incurred . . . even if [the opposing party] had promptly and fully obeyed those orders").

UPS relies on <u>Crozin v. Crown Appraisal Group, Inc.</u>, No. 2:10-cv-581, 2012 U.S. Dist. LEXIS 71599, at *5 (S.D. Ohio May 23, 2012), for the proposition that a fee applicant bears "the burden of establishing . . . entitlement to an attorney-fee." <u>Id.</u> at *6. Using <u>Crozin</u> as its chief precedent, UPS argues that it would be unjust for Bobo to receive the amount awarded by the Magistrate Judge. <u>Id.</u> at * 7 ("It would be unjust to award attorneys' fees and expenses of an amount that Defendants failed to prove at the hearing.").

<u>Crozin</u> does not support UPS. In <u>Crozin</u>, the district court denied a request for fees because there was "no evidentiary basis upon which to award any amount." <u>Id.</u> at *5. The party seeking the fee had "submitted <u>no evidence</u> in the form of sworn testimony, affidavits, or declarations in support of the fee application." <u>Id.</u> at *4-5 (emphasis in original). Without an evidentiary basis for a decision, it would have been unjust to award fees. <u>Id.</u> at *7.

Bobo has submitted sworn affidavits and itemized spreadsheets to support his application for fees and costs. (<u>See</u> Aff. of L. Oneal Sutter, ECF No. 212-1); (Aff. of Lucien Gillham, ECF No. 212-2); (Invoice # 10367); (Sutter & Gillham, P.L.L.C. Income Customer Detail, ECF No. 212-4); Sworn Decl. of Andrew C. Clarke); (Sworn Decl. of Bryan Huffman, ECF No. 212-6.) Bobo's exhibits explain the basis for the fees charged, the

attorneys' hourly rates, and the nature of the work performed. Unlike the court in <u>Crozin</u>, the Magistrate Judge had sufficient "evidentiary basis upon which to award" an amount. <u>Crozin</u>, 2012 U.S. Dist. LEXIS 71599, at *5. The Court does not have a definite and firm conviction that the Magistrate Judge erred.

### d. The Magistrate Judge's Calculations Are Adjusted

UPS objects that the fees awarded are inconsistent with the Magistrate Judge's factual determinations in the November 21 Order.

In the November 21 Order, the Magistrate Judge reviewed Bobo's fee requests and "concluded that no fees should be ordered before the date that UPS responded to the Court's May 11, 2012 Order, as it is these responses that were incomplete and eventually necessitated the mistrial." (Nov. 21 Order 5.) UPS responded to the Court's May 11 order on June 11, 2012. (ECF No. 187.) The Magistrate Judge struck all entries for attorneys' fees and costs requested before June 11.

The Magistrate Judge reduced Bobo's requested fees and costs "related to depositions, as these hours should be useful to the resolution of this case even absent the mistrial." (Nov. 21 Order 8.) The Magistrate Judge did not adjust Bobo's fees related to damages calculations. (<u>Id.</u>) Fees for post-trial mediation were deducted because there was "no certainty that the trial would have resulted in a verdict even without the

mistrial." (Id.) The Magistrate Judge deducted $37,890.00 for fees on or before June 11, 2012, from Sutter and Gillham's fee request and $4,580.11 in costs. (Id. 8-9.) The Magistrate Judge deducted $44,972.50 from Clarke's fee request and $350.00 in costs.

UPS argues that the Magistrate Judge miscalculated the fee award. Specifically, UPS argues that, although the Magistrate Judge subtracted $37,890 from Sutter and Gillham's fees, the Magistrate Judge's calculation was too high. UPS also argues that the Magistrate Judge failed to subtract fees and costs related to depositions, mediation, and damage requests. In a footnote, UPS draws the Court's attention to two typographical errors, in which fees deducted from Sutter, Gillham, and Clarke's requests were switched. (Id. 9 n.1.)

The Magistrate Judge miscalculated Sutter and Gillham's fee award. Subtracting $37,890.00 from $116,670.00 results in an award of $78,780.00, not the $82,982.50 awarded. (See Invoice #10367.) The Magistrate Judge also erred in failing to subtract: (1) $2,975.00 for fees related to the depositions of UPS' corporate representative; and (2) $2,239.88 for fees related to mediation. The Magistrate Judge decided that the fee award should be reduced to exclude depositions and mediation, but the final award did not include those reductions. Thus,

$5,214.88 should be subtracted from $78,780.00. Bobo is awarded $73,565.12 in fees incurred by Sutter and Gillham.

UPS also argues that $120 should be subtracted for fees related to damages calculations. The November 21 Order did not state that fees would be adjusted to reflect damages calculations. The Magistrate Judge did not "find any requested fees on or after June 11, 2012 for Plaintiff's damages calculations, and thus the fee award will not adjusted on this basis." (Nov. 21 Order 8.) The Magistrate Judge did not explicitly state that fees related to damages would be reduced. UPS' objection to this amount is not well taken.

UPS argues that Clarke's fee award should be reduced by $560.00 because that amount corresponds to deposition preparation. The Magistrate Judge's November 21 Order concluded that "UPS should not be required to compensate Plaintiff for the attorneys' fees related to depositions . . . [including] the deposition of Plaintiff and his wife." (Id. 8.) Clarke's fee of $62,647.50 will be reduced by $560.00. Bobo is awarded $62,087.50 in fees incurred by Clarke.

### 2. Bobo's Objections

Bobo objects to the Magistrate Judge's November 21 Order because the time period established by the Magistrate Judge, which ran from June 11, 2012, was too narrow. (Notice of Objections of Pl. to Magistrate's Order 2.) According to Bobo,

"fees should run from the day Plaintiff filed his Motion to Compel in March 2012, or alternatively, from the day the Order was entered granting the Motion to Compel in May 11, 2012." (Id.) Bobo also objects "to the decision to deny more serious sanctions than simple fees." (Id.) The "more serious sanctions" include striking the Answer and denying UPS' affirmative defenses. Bobo also argues that the Magistrate Judge's refusal to conclude UPS acted willfully is clearly erroneous.

### a. The Time Period Established For Sanctions Was Not Clearly Erroneous

Bobo argues that the Magistrate Judge erroneously established a June 11 date from which to award sanctions. UPS responded to the Magistrate Judge's May 11 Order on June 11. From June 11 until the Court declared a mistrial based on discovery violations, UPS had an opportunity to comply with the May 11 Order. The Magistrate Judge did not err in establishing the June 11 date.

### b. More Severe Sanctions Are Not Warranted

Bobo's objections about more severe sanctions repeat his objections to the September 12 Order. The Court has addressed Bobo's argument about more severe sanctions in discussing the September 12 Order. The Magistrate Judge's conclusion about sanctions was not clearly erroneous.

### c. The Magistrate Judge's Decision About Willfulness Was Not Clearly Erroneous

Bobo's objections to the November 12 Order mirror his objections to the September 12 Order. The Court has addressed Bobo's argument about willfulness in discussing the September 12 Order. The Magistrate Judge's conclusion about sanctions was not clearly erroneous.

### C. The December 6 Order

In addition to modifying language in the September 12 Order, the December 6 Order required UPS to supplement its June 11, 2012 discovery responses, deferred ruling on Bobo's request for an adverse jury instruction until the appropriate time, and denied Bobo's request for more severe sanctions. (Dec. 6 Order 4-5.) The Magistrate Judge denied Bobo's Fourth Motion for Sanctions and Motion to Strike. (Id. 5.)

### 1. Bobo's Objections

Bobo objects to the December 6 Order because the Magistrate Judge erred in not: (1) concluding that UPS intentionally abused discovery rules; (2) ordering adverse jury instructions; (3) ordering UPS to produce all witnesses under its control at trial; (4) requiring UPS to supplement its discovery responses; and (5) requiring UPS to produce several witnesses for deposition at its own expense. (Objection to Magistrate's Orders 6-9, ECF No. 238.)

Bobo's objection to the Magistrate Judge's refusal to conclude that UPS intentionally abused the discovery rules has already been addressed. The Magistrate Judge's decision is not clearly erroneous.

Bobo's objection based on adverse jury instructions has already been addressed. The Magistrate Judge's decision is not clearly erroneous.

Bobo's next three objections are based on expanding the scope of discovery. In the November 21 Order, which was confirmed by the December 6 Order, the Magistrate Judge refused to grant Bobo's request to entertain the sanction of reopening and expanding discovery. (Nov. 21 Order 3 n.3.) The Magistrate Judge denied that request because it went beyond the scope of the May 11 Order. (See Aug. 28 Hr'g Tr. 5:18-22.) The Court has addressed the Magistrate Judge's decision to limit the scope of discovery proceedings to the May 11 Order. The Magistrate Judge's decision is not clearly erroneous.

### 2. UPS' Objections

UPS objects to the Magistrate Judge's December 6 Order because: (1) UPS did not receive specific notice of sanctions in violation of its due process rights; and (2) the Magistrate Judge's modification of the September 12 Order does not correct the lack of due process afforded to UPS.

The Court has addressed UPS' argument that it failed to receive adequate notice. UPS' objection mirrors the argument that the Court has overruled. UPS received adequate notice.

UPS also argues that the Magistrate Judge's November 21 Order was insufficient to safeguard its due process rights. The Magistrate Judge's December 6 Order states that "there is no question that both Bobo and UPS were aware of the Court's position" about sanctions. (Dec. 6 Order 3.) The Court agrees. The Magistrate Judge explicitly stated that the August 28 hearing was intended to address sanctions arising from violations of the May 11 Order. Given the scope and subject matter of the August 28 hearing, UPS was aware of possible sanctions.

### IV. Conclusion

For the foregoing reasons, Bobo's objections to the September 12 Order are OVERRULED. Bobo's objections to the November 21 Order are OVERRULED. Bobo's objections to the December 6 Order are OVERRULED.

UPS' objections to the November 21 Order are SUSTAINED IN PART and OVERRULED IN PART. UPS' objections to the December 6 Order are OVERRULED.

Those portions of the three orders not overruled are AFFIRMED in accordance with this order.

So ordered this <u>22d</u> day of January, 2013.

s/ Samuel H. Mays, Jr._____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE